## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **(1) ADEBOWALE IJIYODE,** | |
| **Plaintiff,** | |
| **v.** | **Case No.:** |
| **(1) CITY OF OKLAHOMA CITY ex. rel. OKLAHOMA CITY POLICE DEPARTMENT,** | **ATTORNEY LIEN CLAIMED** |
| **(2) BOARD OF COUNTY COMMISSIONERS OF SEQUOYAH COUNTY ex rel. SEQUOYAH COUNTY SHERIFF OFFICE,** | |
| **(3) RON C. BACY,** | |
| **(4) CHANSE ALEXANDER,** | |
| **(5) LARRY LANE,** | |
| **(6) DEPUTY FNU EDWARDS,** | |
| **Defendants.** | |

## COMPLAINT

Plaintiff, Adebowale Ijiyode ("Ijiyode"), by and through the undersigned counsel, alleges the following for his Complaint against Defendants City of Oklahoma City ex. rel. Oklahoma City Police Department ("Defendant OKCPD"), Ron C. Bacy ("Defendant Bacy"), Chanse Alexander ("Defendant Alexander"), Board of County Commissioners of Sequoyah County ex. rel. Sequoyah County Sheriff Office ("Defendant SCSO"), Larry Lane ("Defendant Lane"), and Deputy FNU Edwards ("Defendant Edwards").

### I.    PARTIES

1.  Plaintiff, Adebowale Ijiyode, is a natural person and at all relevant times was a lawful motorist traveling through Oklahoma.

2.  Defendant OKCPD is a municipality and political subdivision located in Oklahoma County, State of Oklahoma and is responsible for the operation of the Oklahoma City

Police Department and its law enforcement officers. As such, Defendant OKCPD may sue or be sued by name and has authority to employ law enforcement officers, appoint a police chief, and delegate to the police chief final policy and decision-making authority regarding law enforcement matters for the City of Oklahoma City.

3.     Defendant Ron C. Bacy was, at all relevant times, a sworn Oklahoma City Police Officer and Chief of Police, employed by and working for Defendant OKCPD. Defendant Bacy engaged in the conduct complained of under the color of law and in the scope of his employment as agent, representative, and final delegated decision maker of Oklahoma City Police Department. Defendant Bacy was responsible for ensuring that all officers, including Defendant Alexander, were adequately trained in regard to exercising necessary force to accomplish an arrest and identifying and interacting with members of the community. Defendant Bacy is being sued in his official capacity as Chief of Police only.

4.     Defendant Alexander was, at all relevant times, a sworn Oklahoma City Police Officer, employed by and working for Defendant OKCPD. Defendant Alexander engaged in the conduct complained of under the color of law and in the scope of his employment as agent and representative of Defendant OKCPD. In the alternative, Defendant Alexander's actions were so reckless and malicious that they could not be said to be a part of his good faith performance of his duties as police officer such that Defendant Alexander's conduct exceeded the scope of his employment.

5.     Defendant SCSO is and was at all times relevant hereto responsible for the operation of the Sequoyah County Sheriff's Office and its law enforcement officers. As such, Defendant SCSO may sue or be sued by name and has authority to employ law enforcement officers,

2

appoint a sheriff, and delegate to the sheriff final policy and decision-making authority regarding law enforcement matters for the County of Sequoyah County.

6.    Defendant SCSO, at all times material hereto, delegated to Defendant Lane in his official capacity, the responsibility and authority to establish and implement policies, procedures, practices, and customs used by Sequoyah County deputies. At all times material hereto, Defendant Lane and Defendant Edwards were acting under the color of state law.

7.    Defendant Edwards was, at all relevant times, a sworn Sequoyah County Deputy, employed by and working for Defendant SCSO. Defendant Edwards engaged in the conduct complained of under color of law and in the scope of his employment as agent and representative of Defendant SCSO. In the alternative, Defendant Edward's actions were so reckless and malicious that they could not be said to be a part of his good faith performance of his duties as deputy such that Defendant Edward's conduct exceeded the scope of his employment.

## II.    JURISDICTION AND VENUE

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

8.    This action arises from an incident that commenced in Sequoyah County, Oklahoma, and extended into Oklahoma County, Oklahoma.

9.    This Court has jurisdiction over the parties hereto, jurisdiction over the subject-matter hereof, and venue is proper.

## III.    GTCA COMPLIANCE

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

10. Plaintiff submitted a written notice of claim to both Oklahoma County and Sequoyah County clerks as required by the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 156. The notice was properly filed with the respective offices of the Counties as required for claims against the municipality.

11. Plaintiff's written notice of claim included all pertinent information as required by the GTCA, including a detailed description of the date, time, place, and circumstances of the incident giving rise to the claim.

12. Oklahoma County denied Plaintiff's claim in writing on March 3, 2025.

13. Sequoyah County failed to approve or deny Plaintiff's claim within 90 days after it was properly submitted. Pursuant to 51 O.S. § 157, Plaintiff's claim was deemed denied.

14. This action is timely filed within 180 days of the denials of Plaintiff's claim, as required by 51 O.S. § 157.

## IV. FACTUAL BACKGROUND

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

### a. Sequoyah County Stop (Morning of November 7, 2023)

15. On November 7, 2023, at approximately 8:35 AM, Plaintiff was driving westbound on Interstate 40 near Exit 325 when he was stopped by Defendant Deputy Edwards of the Sequoyah County Sheriff's Department for allegedly exceeding the speed limit.

16. After a brief exchange between Plaintiff and Defendant Edwards, Edwards directed Plaintiff to exit his vehicle and placed him in the back of Edward's patrol vehicle.

17. While Plaintiff was confined in Edward's patrol vehicle, a K-9 unit was deployed to conduct a free-air sniff around Plaintiff's vehicle. Edwards told Plaintiff that free-air sniff searches were "standard procedure" for traffic violations.

18. Deputies claimed the K-9 alerted to drugs or narcotics; they then conducted a full search of Plaintiff's vehicle.

19. During the search, deputies located approximately $132,000.00 in U.S. currency, stored in a suitcase for safe travel. Plaintiff informed deputies that the funds were legally obtained and intended for lawful investment purposes.

20. Despite Plaintiff's explanation, deputies placed him in handcuffs and transported him to the Sequoyah County Sheriff's Department, where he was interrogated for several hours.

21. Plaintiff repeatedly requested an attorney, but his requests were denied. Deputies continued to question the legitimacy of the funds, and Plaintiff repeatedly explained they were legally obtained and were intended to be used for lawful purposes.

22. Eventually, Plaintiff was released and his funds were returned in a black trash bag as a result of Sequoyah County deputies tearing his suitcase apart.

23. On information and belief, Sequoyah County deputies and/or other representatives relayed information about Plaintiff and his currency to OKCPD, suggesting he was travelling with drugs and/or illegal funds, despite having no evidence or proof of same.

   b. **Oklahoma City Stop (Afternoon of November 7, 2023)**

24. Later that same day, at approximately 1:49 PM, Plaintiff was driving westbound on Interstate 40 near South Anderson Road in Oklahoma City when he was stopped by Defendant OKCPD Officer Chanse Alexander.

25. Defendant Alexander claimed he observed Plaintiff's "brake lights activated prior to the turn but not the signal light."

26. Almost immediately after initiating the traffic stop, Defendant Alexander ordered Plaintiff to exit his vehicle and placed Plaintiff in the back of Defendant Alexander's patrol vehicle.

27. While Plaintiff was confined in the patrol vehicle, a K-9 was deployed to conduct a free-air sniff around Plaintiff's vehicle. Officers claim the K-9 alerted to the odor of narcotics. Plaintiff repeatedly stated there were no illegal substances and expressly withheld consent to any search.

28. Officers proceeded to search Plaintiff's vehicle. During the search, officers again located the funds aforementioned. Because Sequoyah County deputies had earlier cut the lock off the suitcase containing the funds, Plaintiff's funds were temporarily stored in a black trash bag.

29. Officers focused their investigation on the funds, attempting to elicit statements suggesting the funds were drug proceeds. Plaintiff repeatedly explained that he is an investor – including in real estate – and that the funds were lawfully obtained and were intended to be used for lawful  purposes.

30. No illegal drugs or contraband were found during the search. Officers had no evidence connecting the funds within the vehicle to illegal origins or activity.

31. Nevertheless, officers arrested Plaintiff on an accusation that he possessed "acquired proceeds from drug activity," and he was booked into jail. Plaintiff posted bond and was released the following day.

32. The State of Oklahoma subsequently dismissed all criminal citations and/or charges against Plaintiff related to the stop.

33. Despite the dismissal and absence of probable cause, Defendants have continued to withhold Plaintiff's $132,000.00, depriving him of the use and enjoyment of his property and causing substantial financial and personal harm.

34. At all relevant times, Plaintiff was engaged in lawful activity. He did not consent to a search. The duration and scope of the stops were unreasonably extended to facilitate canine searches and searches without independent reasonable suspicion. The seizure of Plaintiff's currency lacked probable cause.

35. Defendants Alexander and Edwards acted jointly and in concert – including by relaying information between Sequoyah County and OKCPD – to deprive Plaintiff of his constitutional rights. Their conduct was willful, wanton, reckless, and undertaken with deliberate indifference to Plaintiff's constitutional rights.

## V.     POLICIES, PRACTICES, CUSTOMS, AND TRAINING

36. The constitutional violations described above were caused by the policies, practices, customs, and/or deliberate indifference of Defendants OKCPD, SCSO, Lane, and Bacy including, but not limited to:

    a. Traffic-interdiction practices on interstate corridors that prioritize currency seizures absent individualized probable cause;

    b. Prolonging traffic stops to conduct canine sniffs without independent reasonable suspicion;

    c. Deploying or relying upon canine alerts as a proxy for probable cause without ensuring reliability, appropriate certification, and handler practices that avoid cueing and false alerts;

7

    d.  Seizing large sums of currency based solely on the amount and method of storage without corroborating evidence of drug activity;

    e.  Failing to train, supervise, investigate, and discipline officers regarding constitutional limits on traffic stops, arrests, searches, canine deployments, and property seizures;

    f.  Encouraging or acquiescing in inter-agency coordination that facilitates pretextual stops and property-focused investigations targeting motorist for civil or criminal forfeiture revenue;

    g.  Failing to promptly return seized property or to ensure due process protections once criminal citations are dismissed or probably cause is absent.

37.   The above polices and/or customs were the moving force behind the constitutional violations suffered by Plaintiff.

## **COUNT I**
### FALSE ARREST IN VIOLATION OF 42 U.S.C. § 1983

    Plaintiff incorporates all previous allegations and statements and further alleges as follows:

38.   Defendants violated Plaintiff's Fourth Amendment Rights cognizable under 42 U.S.C. § 1983, which guarantees security from unreasonable searches and seizures.

39.   Defendants' conduct carrier out under the color of state law deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution and laws.

40.   Defendants wrongfully arrested and detained Plaintiff without probable cause for the arresting charge of acquiring proceeds from drug activity.

41.    No information or even suspicion existed that would lead a reasonably prudent person or officer to believe Plaintiff committing or was committing the offense aforementioned; thus, no probable cause existed.

42.    The above-described conduct of Defendants was a direct and proximate cause of the deprivation of Plaintiff's established Fourth Amendment rights, as well as the resulting injuries and damages.

43.    Defendants, under color of law, wrongfully arrested Plaintiff, and thus violated Plaintiff's constitutional rights and is therefore, "liable...in an action at law, suit in equity, or other proper proceeding for redress...," as per 42 U.S.C. § 1983.

**COUNT II**
DELIBERATELY INDIFFERENT POLICIES, PRACTICES, AND CUSTOMS, AND
DELIBERATELY INDIFFERENT TRAINING AND SUPERVISION
IN VIOLATION OF 42 U.S.C. § 1983

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

44.    Defendants OKCPD, Bacy, SCSO, and Lane, acting in their official capacities, maintained and/or permitted the policies, customs, and practices described above.

45.    These policies, customs, and deliberate indifference to training and supervision were the moving force behind the violation of Plaintiff's constitutional rights and the damages he suffered.

46.    During all times relevant hereto, there were no guidelines, or wholly inadequate guidelines, in place as to the standard of care specific to individuals carrying large sums of money in their vehicle. It is common knowledge that civilians can have access to large sums of money and it not be connected to any form of illegal activity and it is vital that governmental agencies and its employees, agents, and/or representatives have policies in

9

place establishing a constitutionally permissible standard of care for said individuals and entities to follow in order to address this occurrence.

47. It is clearly established law that Defendants Bacy and Lane must train and supervise police officer, deputies, and other law enforcement personnel about proper procedure for arrests to reduce the occurrences of the violations of civilians'' constitutional rights of this nature.

48. Defendants Bacy and Lane have an affirmative duty to take action to properly train and supervise its employees or agents and prevent their unlawful actions.

49. Defendants Bacy and Lane failed to properly train and supervise its employees or agents in a manner and to an extent that amount to deliberate indifference. Defendants Alexander and Edwards engaged in the above-described conduct pursuant to this policy, practice, custom, or decision.

50. Defendant Bacy was the official policymaker and final decision-maker for Oklahoma City and Oklahoma City PD in the area of law enforcement.

51. Defendant Lane was the official policymaker and final decision-maker for Sequoyah County and its Sheriff's Department in the area of law enforcement.

52. Under information and belief, Defendants Bacy and Lane had a policy, custom, and procedure that permitted, encouraged, and was the moving force behind officers/deputies like Defendants Alexander and Edwards conducting themselves unlawfully when dealing with civilians with large sums of proceeds which were acquired lawfully with the intent to be used for lawful purposes.

53. Upon information and belief, Defendants Bacy and Lane, acting through their subordinate law enforcement officers, had a persistent, widespread practice of depriving citizens of

their constitutional rights, that it was sufficiently common and well established as to constitute municipal policy or custom.

54. Upon information and belief, these customs and policies of unconstitutional conduct, as shown by the acts and omissions of other subordinate law enforcement officers, permitted or condoned actions that have occurred for so long and with such frequency that the course of conduct demonstrated the governing body's knowledge and acceptance of such conduct.

55. Defendants Bacy and Lane understood that police officers and deputies, such as Defendant Edwards and Alexander:

    b.  Could and would exceed constitutional limitations on searches and seizures;

    c.  That providing inadequate training or failing to enforce existing policies under such circumstances demonstrates deliberate indifference on the part of the Defendants toward persons with whom Defendants Edwards and Alexander would come into contact;

    d.  And that failing to provide such training or to enforce policies and procedures to ensure that Defendants Edwards and Alexander followed such training would be a direct causal link between the constitutional deprivation to which citizens, such as Plaintiff, would be exposed.

56. The above-described policies and customs of Defendants Bacy and Lane permitted or condoned the violation of Plaintiff's rights, demonstrated deliberate indifference to the constitutional rights of the person within the City of Oklahoma City and Sequoyah County, State of Oklahoma and were the cause of the damages suffered by Plaintiff.

57. Defendants Lane and Bacy also knew that absent the adoption of specific and/or adequate policies, procedures, and tactics governing law enforcement encounters with citizens like

Plaintiff, and absent training of law enforcement officers in such policies, procedures, and tactics, it was highly predictable that such failure to train would lead to law enforcement officers' violation of the Fourth Amendment Rights of citizens, and could likely result in otherwise avoidable damages to such citizens.

58.  Under information and belief, Defendants Edwards and Alexander received no form of discipline or reprimand from Defendant Lane or Bacy for their above-described unlawful acts.

59.  Defendants Lane and Bacy's actions and/or inactions stem from the execution of government policy, custom, or official decision of indifference as to the protection of citizens' constitutional rights and their actions can fairly be said to represent such a policy and custom.

60.  Defendants Lane and Bacy's failure to ensure and accomplish or enforce such proper training caused Defendants Edwards and Alexander to effectuate an inappropriate and unlawful arrest in violation of the U.S. Constitution, proximately and directly causing damage to Plaintiff.

### COUNT III
CIVIL CONSPIRACY

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

61.  Defendants entered into an agreement – explicit or tactic – to deprive Plaintiff of his constitutional rights by coordinating the detention, search, seizure of currency, and ultimate arrest without probable cause and was motivated by discriminatory animus aimed at denying Plaintiff equal protection of the laws.

62.   In furtherance of this agreement, Defendants committed overt acts and as a direct and proximate result of the conspiracy, Plaintiff suffered a deprivation of his constitutional rights and financial damages.

## VI.    CAUSATION OF INJURIES AND DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

63.   The injuries and damages sustained by Plaintiff were produced in a natural and continuous sequence from Defendants' violation of one or more of the above-mentioned independent constitutional duties.

64.   The injuries and damages sustained by Plaintiff were a probable consequence from Defendants' violation of one or more of the above-mentioned independent duties.

65.   Defendants should have foreseen and anticipated that a violation of one or more of the above-mentioned independent duties would constitute an appreciable risk of harm to others, including Plaintiff.

66.   If Defendants had not violated one or more of the above-mentioned independent duties, then Plaintiff's injuries and other damages would not have occurred.

## VII.    COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

67.   The damages sustained by Plaintiff as a result of Defendants' violations include, but are not limited to the following:

   a.   Plaintiff's mental pain and suffering, past and future;

   b.   Loss of earnings; and

c.  Impairment of earning capacity;

## VIII.    AMOUNT OF DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

68.  Plaintiff's injuries and damages are in excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332, plus attorney fees, interest, and costs and all such other and further relief for which should be awarded as judgment against Defendants in an amount to fully and fairly compensate Plaintiff for each and every element of damages that has been suffered.

## IX.    PUNITIVE DAMAGES

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

69.  Plaintiff is entitled to punitive damages on claims brought against individual Defendants pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts, and omissions alleged herein constitute reckless or callous indifference to Plaintiff's federally protected rights.

## X.    DEMAND FOR JURY TRIAL

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

70.  Plaintiff demands a jury trial for all issues of fact presented by this action.

## XI.    RESERVATION OF ADDITIONAL CLAIMS

Plaintiff incorporates all previous allegations and statements and further alleges as follows:

71.   Plaintiff reserves the right to plead further upon completion of discovery to state additional

claims and to name additional parties to this action.

WHEREFORE, Plaintiff, Adebowale Ijiyode, prays for judgment against Defendants in a

sum excess of the amount required for diversity jurisdiction under 28 U.S.C. § 1332, plus

interest, attorney fees, costs, punitive damages, and all such other relief as to which Plaintiff may

be entitled.

Respectfully submitted,


/s/ *Shade C. Kremer*
Shade C. Kremer, OBA #35157
LAI & TURNER LAW FIRM PLLC
2000 N. Classen Blvd., STE N50
Oklahoma City, OK 73106
Telephone: (405) 665-8866
Facsimile: (405) 724-9170
Shade@laiturnerlaw.com
ATTORNEY FOR PLAINTIFF

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**